IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| A. PERRY DESIGNS & BUILDS, P.C.,<br>    *Plaintiff*,<br><br>v.<br><br>J. PAUL BUILDERS, LLC;<br>LEVIN/BROWN ASSOCIATES, INC.; and<br>CTLC, LLC trading as CTLC, INC.,<br>    *Defendants* | No. 23-cv-828-ABA |

**MEMORANDUM OPINION**

This case arises out of a copyright dispute between Plaintiff A. Perry Designs & Builds, P.C. ("Perry" or "Plaintiff"), an architecture company that designs luxury homes, and Defendants J. Paul Builders, LLC ("J. Paul"), Levin/Brown Associates, Inc. ("Levin/Brown"), and CTLC, LLC trading as CTLC, Inc. ("CTLC") (collectively, "Defendants"). Plaintiff asserts that, after providing architectural design services to Sandra and Michael Grier (the "Griers") and registering the copyright in the proposed designs, Defendants infringed Perry's copyright and unlawfully prepared infringing derivative works based on Perry's protected designs. Defendants Levin/Brown and J. Paul have moved to dismiss Plaintiff's Second Amended Complaint. For the reasons stated below, the motions are denied.

**I.    FACTUAL BACKGROUND**

At this stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Perry alleges as follows.

Perry is an Illinois corporation "engaged in the business of designing luxury homes." Second Am. Compl., ECF No. 62 ("Compl.") ¶ 1. Around July 2, 2014, the Griers entered into a

contract (the "Arrisbrook/Griers Contract") with Arrisbrook, LLC ("Arrisbrook"), a Maryland homebuilder. *Id.* ¶ 7. Neither the Griers nor Arrisbrook, LLC are parties in this case. In the contract, Arrisbrook agreed to provide design/build services to the Griers for their new home in Glenelg, Maryland, to be built on an approximately 38-acre lot (the "Grier Residence"). *Id.*; ECF No. 62-2 at 2. The Arrisbrook/Griers Contract identifies Perry as the "licensed architectural firm" providing "architectural services" for the Grier Residence and defined Perry's scope of work to include creating construction documents, drawings, and designs of the potential Grier Residence. Compl. ¶ 8; ECF No. 62-2 at 2.

Section 2.2 of the Arrisbrook/Griers Contract provides that Plaintiff's fees for its architectural services were "5% of total actual fair market construction costs for all the work as included on the drawings (including options and alternates) including site work on the lot." Compl. ¶ 11; ECF No. 62-2 at 3. Section 2.5 of the Arrisbrook/Griers Contract provides that Plaintiff would be "deemed the author and shall retain all common law, statutory and other reserved rights, including copyright," and further specified that the Griers would "have no license to use any of [Plaintiff]'s Documents." ECF No. 62-2 at 3. It also provided that Plaintiffs' "Documents (plans, designs, sketches, notes, all work product, etc.)" would not "convey" to the Griers until "payment of fees for [Plaintiff]'s services." *Id.*

Section 2.7 governs the dispute resolution procedure for any conflicts arising between Plaintiff and the Griers arising from the work covered by the Arrisbrook/Griers Contract, specifically providing that the parties must first attempt informal resolution, then mediation, then binding arbitration in Maryland under American Arbitration Association rules with fee shifting. *Id.* at 3-4. It further provided that "in the event litigation is initiated by either party, the sole and

exclusive venue for litigation of any matter shall be the Circuit Court for Howard County, Maryland." *Id.*

Plaintiff, Arrisbrook, and the Griers executed the Arrisbrook/Griers Contract on July 3, 2014. Compl. ¶ 9; ECF No. 62-2 at 13. Plaintiff began its design services, and created an original design for the Grier Residence titled "Proposed Residence 15125 Devlin Drive, Glenelg, Maryland 21737." Compl. ¶ 13; ECF No. 62-3 at 3. Plaintiff registered the original design with the U.S. Register of Copyrights. Compl. ¶ 15; ECF No. 62-4 at 2-3 (application); ECF No. 62-3 (registration certificate). Sometime after the Arrisbrook/Griers Contract was executed, the Griers formed CTLC, allegedly "for the purpose of holding title to the property and to manage the development of the Cattail Overlook subdivision." Compl. ¶ 17.

In January 2019, after the Griers (and their entity, CTLC) allegedly failed to pay Perry's fees, Perry "terminated its agreement with CTLC and the Griers." *Id.* ¶¶ 18-19. The Griers then connected with another builder, J. Paul, and another architecture firm, Levin/Brown, to continue with the project. *Id.* ¶ 20. Contemporary correspondence indicates that the idea was that Levin/Brown would "trac[e] the original plans, sections and elevations," correct any "errors" in those documents, prepare some "alternative designs" in response to "numerous changes that the Grier's [sic] wished to incorporate," and otherwise serve as the architect for the project going forward. ECF No. 62-6 at 2. But apparently recognizing that it was being asked to pick up with the project using Perry's designs, Levin/Brown insisted that it "receive a document from the Grier's [sic] indicating that they will hold Levin/Brown harmless, indemnify and defend against any actions taken by [Plaintiff]." *Id.* at 3.

Sandra Grier, as CEO of CTLC, signed a document entitled Agreement and Release ("Release Agreement"). ECF No. 62-8. That document purported to be entered "by and between"

3

Perry and Levin/Brown. *Id.* at 2. But Perry did not sign the agreement, was not a party to it, and alleges it did not draft or have any knowledge of it, or authorize Ms. Grier to act on its behalf. Compl. ¶¶ 30-34. In the agreement, Ms. Grier (on behalf of CTLC, and purportedly on behalf of Perry) "authorize[d]" Levin/Brown to "use" Perry's drawings, and "grant[ed] a one-time license to use [Perry's] Drawings to create . . . Revised Drawings." ECF No. 62-8 at 2. The agreement also purports to release Levin/Brown from "any claims of intellectual property rights," including any copyright that Perry "has to its Drawings relative to [Levin/Brown's] use of the Drawings." *Id.*[1]

In January 2020, CTLC entered into a contract for J. Paul to serve as general contractor to "complete the construction of the Grier Residence." Compl. ¶ 20; ECF No. 62-5. In an addendum, Levin/Brown was officially hired as the new architect for the project. ECF No. 62-5 at 40. The addendum lists Perry as the "Initial Architect." *Id.* CTLC also agreed to "indemnify and hold harmless [J. Paul] from any claim, damage or experience . . . arising out of a claim by [Perry]" that "use of" Perry's drawings, including "as originally prepared" by Perry or "modified" by J. Paul, would "violate[] any intellectual property rights of [Perry]." *Id.* at 64-65 (section 33 of agreement).

Eventually, construction began on the Griers' residence. *See* Compl. ¶¶ 40-41 & ECF No. 62-9 (satellite image showing a house that Perry alleges "embodies and/or incorporates, and therefore is copied from and substantially similar to Plaintiff's copyrighted design"). Perry

---

[1] The precise chronology with respect to the Release Agreement is not clear from the present record. Jay Brown of Levin/Brown wrote on November 19, 2019, stating that Levin/Brown would need a release from the Griers. ECF No. 62-6. The release that Perry has attached to the operative complaint bears an electronic signature from Sandra Grier dated October 17, 2019. ECF No. 62-8. The question of whether the release was executed before Mr. Brown's email is not material to any of the present issues, however.

alleges that in preparing the final plans for construction, Levin/Brown in fact "trace[d] Plaintiff's copyrighted plans," and that Levin/Brown and J. Paul (along with CTLC) made unauthorized "copies" of them. Compl. ¶¶ 22-24. Perry also alleges that Levin/Brown "used Plaintiff's copied plans as a sample of its own architectural work for marketing purposes and to attract new business." *Id.* ¶ 25.

## II.     PROCEDURAL HISTORY

Plaintiff first brought this action on March 24, 2023, originally asserting claims only against J. Paul. ECF No. 1. On April 18, 2023, J. Paul filed an Answer, along with a counterclaim against Perry and a third-party claim against CTLC for indemnification. ECF No. 10. CTLC answered J. Paul's counterclaim and third-party complaint on May 26, 2023. ECF No. 15. On June 15, 2023, the Court entered a Scheduling Order and Discovery Order. ECF No. 17. On August 4, 2023, CTLC filed a Suggestion of Bankruptcy, which automatically stayed this proceeding. ECF No. 21; *see also* ECF No. 32 (stay order). The Court granted Plaintiff's motion for leave to file a First Amended Complaint, ECF No. 40, which was filed on April 1, 2024, adding Levin/Brown as a defendant. ECF Nos. 41, 43.

On August 8, 2024, after the bankruptcy court modified the automatic stay and permitted the claims against CTLC to continue, *see* ECF No. 51 (joint status report), Plaintiff filed its Second Amended Complaint (the "Complaint") against J. Paul, Levin/Brown and CTLC. ECF No. 62. Plaintiff alleges that all three Defendants engaged in copyright infringement and unlawful derivative use of Plaintiff's copyrighted works under the Copyright Act, 17 U.S.C. § 101, *et seq. Id.*

J. Paul and Levin/Brown have filed motions to dismiss the Complaint. ECF Nos. 67, 69. Plaintiff responded to those motions, ECF Nos. 70, 71, and Levin/Brown and J. Paul filed

replies. ECF Nos. 76, 77. Since the bankruptcy proceeding began, CTLC has not filed anything in this civil action, including any response to the Second Amended Complaint. In the bankruptcy proceeding, CTLC filed a proposed amended Chapter 11 Plan in June 2024, an evidentiary hearing was held, and on August 15 the bankruptcy court entered an order confirming CTLC's proposed Amended Chapter 11 Plan, which became effective August 30, 2024. *See In re CTLC, LLC*, No. DER 23-15444 (Bankr. D. Md. 2024), ECF Nos. 126, 147, 153.

### III.  STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

### IV.  DISCUSSION

Levin/Brown and J. Paul argue the complaint (1) fails to state claims for copyright infringement and derivative copyright use, and (2) should be dismissed for failure to join the

Griers as parties. ECF No. 67 at 4-11; ECF No. 69 at 1-3. For the following reasons, the Court disagrees. Plaintiff has stated claims under the Copyright Act, and the Griers are not required parties to this litigation under Federal Rule of Civil Procedure 19.

### A. Copyright Infringement Claims (Counts 1 and 3)

In Counts 1 and 3, Perry asserts copyright infringement claims against J. Paul and Levin/Brown. Compl. ¶¶ 36-43, 48-55. "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed from which they can be perceived, reproduced, or otherwise communicated," including "architectural works." 17 U.S.C. § 102(a). An architectural work is defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings," and covers "the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." *Id.* § 101.

"To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015) (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001)). "Copying can be proven through direct or circumstantial evidence." *Id.* (quoting *Bldg. Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 578 (4th Cir. 2013)). "Direct evidence of copying . . . includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants." *Id.* (quoting *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006)). Plaintiffs may alternatively offer circumstantial evidence of copying by showing that "the alleged infringer had access to the work

7

and that the supposed copy is substantially similar to the author's original work." *Id.* (citing *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 353-54 (4th Cir. 2001)).

Where a plaintiff seeks to prove copying through circumstantial evidence, substantial similarity is proven by establishing that the copyrighted and infringing works are similar both extrinsically and intrinsically. *Id.* at 538 (citing *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435 (4th Cir. 2010)); *see also id.* (applying the two-part substantial similarity test to architectural works). "'The extrinsic inquiry is an objective one' that 'looks to external criteria' of substantial similarity between the alleged copy and the protected elements of the copyrighted work." *Id.* (quoting *Apple Computer Co. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)). The extrinsic inquiry "focuse[s]" on the "original elements of the copyrighted work," and thus requires a court to "separat[e] out those parts of the work that are original and protected from those that are not." *Copeland v. Bieber*, 789 F.3d 484, 489 (4th Cir. 2015). "Intrinsic similarity, by contrast, is a subjective inquiry that centers on the impressions of a work's 'intended audience,' usually the general public." *Id.* (quoting *Lyons*, 243 F.3d at 801). Whereas the extrinsic similarity analysis looks to whether the works "contain substantially similar ideas," the intrinsic similarity analysis looks to whether the works "express those ideas in a substantially similar manner from the perspective of the intended audience of the work," based on the "total concept and feel of the works." *Lyons*, 243 F.3d at 801.

Levin/Brown and J. Paul argue that Plaintiff has only alleged circumstantial evidence of copying and has failed to satisfy the two-part substantial similarity test by failing to sufficiently allege that either defendant copied "protected elements" of Plaintiff's designs and plans. ECF No. 67 at 6-8; ECF No. 69 at 3. But as explained above, Plaintiff need only allege at this stage the elements of the two-part substantial similarity test if Plaintiff has not alleged that there is

*direct evidence* of copying. Here, Plaintiff has sufficiently pled, through the Second Amended Complaint and its accompanying exhibits, that Defendants planned to trace Plaintiff's original designs, which would include directly copying both the unprotected *and* protected elements of the architectural work. Compl. ¶ 22, ECF No. 62-6. As noted above, Levin/Brown and J. Paul exchanged emails in which Levin/Brown specifically planned to "trac[e] the original plans, sections and elevations without revisions to the design" as instructed by J. Paul. Compl. ¶ 22; ECF No. 62-6. Perry also has alleged that its copyrighted design and Defendants' design are nearly identical in shape and structure. *Compare* ECF No. 62-9 *with* ECF No. 62-10. By alleging direct evidence of copying, Plaintiff is not required to also allege facts necessary to satisfy the Fourth Circuit's two-part substantial similarity test for circumstantial evidence of copying.

But in addition to the allegations of direct copying, the complaint does also make factual allegations that satisfy the intrinsic and extrinsic elements of the circumstantial evidence analysis. Plaintiff has sufficiently pled that Defendants (1) were given access to Plaintiff's copyrighted materials by CTLC and the Griers, Compl. ¶ 23-24, ECF No. 62-5, and (2) produced designs of the Grier residence that are both extrinsically and intrinsically similar, thereby making them substantially similar, to Plaintiff's copyrighted design. Compl. ¶¶ 40-42, 52-54. And at this stage of the litigation, Plaintiff is not required to *demonstrate* substantial similarity; this Court must accept Plaintiff's well-pleaded allegations as true at the pleadings stage. Perry has provided ample allegations and accompanying exhibits, which must be accepted as true, to satisfy both the intrinsic and extrinsic steps in the analysis.

For these reasons, Perry's well-pleaded allegations sufficiently state claims of copyright infringement. The motions to dismiss Counts 1 and 3 will be denied.

B.  **Derivative Copyright Use Claims (Counts 2 and 4)**

9

In Counts 2 and 4, Perry alleges that J. Paul and Levin/Brown engaged in unlawful infringement of Perry's exclusive right to prepare derivative works. Compl. ¶¶ 44-47, 56-59. A copyright owner has the exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106. The Copyright Act defines a "derivative work" as:

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a while, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.

The Copyright Act further provides that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author." 17 U.S.C. § 501(a). Perry argues that Levin/Brown and J. Paul unlawfully produced derivative works based on Perry's copyrighted designs. Compl. ¶¶ 44-47; 56-59. Defendants argue that Perry has failed to sufficiently plead that Defendants have made derivative use of "protected elements" of the Plaintiff's copyright. ECF No. 67 at 8-9; ECF No. 69 at 3.

Plaintiff has stated a claim for infringement of Plaintiff's exclusive right to prepare derivative works based on its designs for the Grier Residence. Plaintiff has alleged that its designs are protected copyrightable works with protected elements. Compl. ¶ 14-16 & ECF No. 62-4. Plaintiff has also alleged that Defendants created revised versions of Plaintiff's original designs, including protected elements. Compl. ¶¶ 24-25 & ECF No. 62-5. Plaintiff's complaint also attaches email correspondence reflecting that Levin/Brown planned to use the derivative designs for marketing purposes. Compl. ¶ 65 & ECF No. 62-7.

Therefore, Counts 2 and 4 state claims of derivative copyright use infringement.

10

### C. Whether The Absence of Claims Against the Griers Requires Dismissal

None of the parties have asserted claims against the Griers. Levin/Brown and J. Paul contend this requires dismissal of Perry's complaint under Federal Rule of Civil Procedure 19.

Under Rule 19(a), a party is a "required party" and "must be joined as a party" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If a person or entity is a "required party" under the Rule 19(a)(1), the court may order that the person or entity be made a party. Fed. R. Civ. P. 19(a)(2).

But joinder may not be feasible if a person or entity is not subject to service of process, or if joinder would destroy diversity jurisdiction. *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). If joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Whether the infeasibility of joining a "required" party justifies dismissal turns on an analysis of the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and

> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*[2]

Where, as here, a defendant has moved to dismiss for "failure to join a party under Rule 19," Fed. R. Civ. P. 12(b)(7), a court "must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party." 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1359 (3d ed. 2024); *Am Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc.*, 186 F.3d at 441.

J. Paul and Levin/Brown argue that the Griers are "required" parties under Rule 19(a), and J. Paul and Levin/Brown will be prejudiced if the Griers are not joined, for two reasons.

First, they argue that, "in the absence of the Griers, complete relief cannot be accorded among those already parties" because "Ms. Grier executed a document representing to [Levin/Brown] that CLTC was licensed to use Plaintiff's designs for the continued development of the Project." ECF No. 67-1 at 9-10. In other words, Defendants contend that if any party is to be held liable for copyright infringement, it should be the Griers. But "defendants who engage in the same act of copyright infringement are jointly and severally liable . . . for damages." *Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 517 (4th Cir. 2002) (internal

---

[2] Earlier versions of Rule 19(a) referred to "necessary" parties, and Rule 19(b) to "indispensable" parties. "[T]he necessary-party label has been eliminated to emphasize that the real purpose of this rule is to bring before the court all persons whose joinder would be desirable for a just adjudication of the action; the term 'indispensable' was used in Rule 19(b) only in a conclusory sense, and it was completely eliminated in 2007 amendments, when the federal rules were restyled." § 1604 *Persons to Be Joined if Feasible—In General*, 7 Fed. Prac. & Proc. Civ. § 1604 (3d ed.).

quotation marks omitted). This application of joint and several liability to copyright infringement and derivative use actions is also confirmed by the Copyright Act itself:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

15 U.S.C. § 504(c)(1); *see also* Fed. R. Civ. P. 19 Advisory Committee's Note to 1966 Amendment ("[A] tortfeasor with the usual 'joint-and several' liability is merely a permissive party to an action against another with like liability."); *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.").

Second, Defendants argue that "if the Griers are not joined to the lawsuit, [Levin/Brown] would be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations related to the rights afforded the Griers under their contract with Plaintiff." ECF No. 67 at 9-10; *see also* ECF No. 69 at 3. The example they offer is that the Griers, if sued separately—or if a claim against them were to proceed in arbitration—might argue that Perry was not "authorized to engage in the practice of architecture" such that the Griers "possess an implied license to use the work product under common law." ECF No. 67-1 at 10. But Defendants are free to assert third-party claims for indemnification or otherwise (if any exist), or to argue and attempt to prove in this case that the Griers were authorized to grant Defendants a license to use the Perry designs. They may also take discovery from the Griers. Questions about Perry's authorization to engage in the practice of architecture, or questions arising from the

13

license that CLTC purported to grant to Levin/Brown, do not render the Griers "required" parties under Rule 19(a), let alone justify dismissal under Rule 19(b).

For these reasons, Defendants' motion to dismiss pursuant to Federal Rules 12(b)(7) and 19(b) will be denied.

## V.  CONCLUSION

For these reasons, Plaintiff has sufficiently stated claims of copyright infringement and derivative use against the Defendants, and Perry's decision not to assert claims against the Griers does not require dismissal. Defendants' motions to dismiss will be denied. A separate order follows.

Date:   November 25, 2024

_____
Adam B. Abelson
United States District Judge